| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS** |
| CHRIS MORALES, | |
| Defendant. | |

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Laura M. Provinzino and Katharine T. Buzicky, Assistant United States Attorneys, hereby provides this response to the defendant's pretrial motions.

## I.      Defendant's Motion to Dismiss Indictment – Doc. No. 56

Defendant, in a one-paragraph motion, moves to dismiss the indictment.  Citing no case law on point, the defendant's motion must be denied because it fails to recognize that Beltrami and the United States are separate sovereigns and it is premature in its attempt to bootstrap an ineffective assistance of counsel claim to an early stage of the proceedings. Further, there is no jurisdiction to remand the case to state court.

### A.      Procedural History

On November 7, 2017, the Beltrami County Sheriff's Office was contacted about a missing 13-year-old girl.  The investigation began and started to narrow on Chris Morales. A Jeep registered to Napoleon Morales with an Illinois license plate had been observed

near the girl's home. Chris Morales' phone number was obtained, and a pen register/trap and track warrant was obtained. Morales and the victim were located in Minneapolis. Post-*Miranda*, Morales disclosed how he met the victim. He disclosed that they had exchanged naked photographs and that he had sent the victim videos of himself masturbating. Morales also disclosed the multiple occasion in which he and the victim had sexual intercourse. A review of the defendant's Facebook communication with the victim indicated that he clearly understood her age ("I didn't wanna wait five fucking years for my girl") and that she produced child pornography at his request ("I'm supposed to give daddy what he wants.").

On November 9, 2017 Morales was charged with five counts of possession of pornographic work involving minors in Beltrami County for images that were possessed on Morales' Apple iPhone. Law enforcement continued to investigate the case, including obtaining warrants for social media accounts and one of Morales' laptops—resulting in more than 100,000 pages of evidence to review.

In September 2018, a criminal complaint was obtained from the Honorable Jon T. Huseby for the sexual exploitation of children in violation of 18 U.S.C. § 2251. An indictment followed on January 22, 2019 with one count of transferring obscene material to minors on August 4, 2017, in violation of 18 U.S.C. § 1470; one count of coercion and enticement on August 11, 2017, in violation of 18 U.S.C. § 2422(b); two counts of travel with intent to engage in illicit sexual conduct on August 15, 2017 and November 1-7, 2017, in violation of 18 U.S.C. § 2423(b); and one count of production of child pornography on

August 29, 2017, in violation of 18 U.S.C. § 2251(a) and (e). The coercion and travel counts carry a 10-year mandatory minimum sentence, and the child pornography production count carries a 15-year mandatory minimum sentence. No child pornography possession counts were charged federally. The county child pornography possession charges were dismissed.

### B.    Legal Argument

Under the law of separate sovereign doctrine, a single act that violates the laws of two separate sovereigns constitutes two separate crimes, and prosecutions by each of these sovereigns does not violate the Double Jeopardy Clause. *See Heath v. Alabama*, 474 U.S. 82, 88 (1985). "Whether two entities that seek to successively prosecute a defendant for the same conduct are separate sovereigns depends on 'whether the two entities draw their authority to punish the offender from distinct sources of power.'" *United States v. Traylor*, 978 F.2d 1131, 1132 (9th Cir. 1992) (quoting *Heath*, 474 U.S. at 88). Here, there can be no dispute that Beltrami County and the United States are separate sovereigns. Because they are separate sovereigns, prosecutions undertaken by the former do not create a double jeopardy bar to criminal prosecution by the latter.

Simply put, a prosecution in state court under state law, followed by a prosecution in federal court under federal law, does not violate the constitutional prohibition on double jeopardy. That is because a government's interest in vindicating its sovereign authority through enforcement of its laws by definition can never be satisfied by another sovereign's enforcement of *its* own laws. *See Heath*, 474 U.S. at 93. Thus, the federal government

always "has the right to decide that a state prosecution has not vindicated a violation" of federal law. *Id.* Such a decision is often made only after the state prosecution has ended.

Importantly, the Eighth Circuit recognizes the cooperation between federal and county/state officials is not offensive to the constitution but actually welcome. In *United States v. Leathers*, 354 F.3d 955, 960 (8th Cir. 2004), the Eighth Circuit declined to credit a similar argument to that made by Morales—that the referral of the matter to federal prosecutors was the direct cause of the federal prosecution and that the federal prosecutors were not acting independently. "A causal connection such as the one shown here does not make a subsequent federal prosecution a 'sham and cover' for a state prosecution. Referrals and cooperation between federal and state officials not only do not offend the Constitution but are common place and welcome." (citing *Bartkus v. Illinois*, 359 U.S. 121, 123 (1959)). The Eighth Circuit also found highly suspect that discussion of the relative length of a state versus federal sentence—even if inaccurate—could improperly influence a federal prosecutor's independent assessment of a case as a candidate for federal prosecution. *Id.* at 961. As held in *Leathers*, and as is the case here, there is nothing to suggest that the federal prosecutor in the case was anything but independent. The dual sovereignty doctrine applies.[1] *Id.* Here, Morales' right to be free from being placed in

---

[1] AUSA Katharine Buzicky provided the *Petite* policy to defense counsel. As indicated, there was no need to seek any waiver of the *Petite* policy in this case. While the undersigned does not anticipate any such argument, the Eighth Circuit case declined to examine the application of the *Petite* policy for evidence of vindictive prosecution because it does not confer any substantive rights and its application cannot form the basis for a claim of improper prosecution. *See Leathers*, 354 F.3d at 962.

jeopardy twice was not violated. The argument is even stronger here than in *Leathers* where he faced a subsequent federal prosecution for the same acts.

The Eighth Circuit found no violation when a defendant was convicted in state court for possession with intent to distribute controlled substances and then tried in federal court for conspiracy with intent to distribute crack cocaine. *See United States v. Johnson*, 169 F.3d 1092, 1096 (8th Cir. 1999). The state and federal prosecutions were conducted independently by different prosecutors. That is the case here. Child pornography charges were brought in Beltrami County; travel, coercion, and child pornography production counts were brought in the United States District Court.

Notably, the two cases cited by defendant are readily distinguishable. In *United States v. Morris*, 470 F.3d 596, 600 (6th Cir. 2006), the defendant was investigated and arrested by a state-federal joint task force on firearm and drug-related charges. The state court plea offer included an agreement that the defendant would not be prosecuted in federal court, even though the state and federal governments could have chosen to pursue separate prosecutions. No such promise was made to Morales. Further, the Sixth Circuit found that because the U.S. Attorney's Office had made itself a party to the state court plea offer, the district court was justified in enforcing the plea offer against it based on traditional principles of contract law. Here, the U.S. Attorney's Office was not a party to any state court plea offer. Moreover, *Morris* has been called into question and distinguished even within the Sixth Circuit. *See, e.g.*, *Turner v. United States*, 848 F.3d 767, 772 (6th Cir. 2017) (finding that the state and federal governments pursued *separate*

prosecutions against the defendant that, although arising out of the same conduct, were independent of each other). As here, it was not an either-or choice for Morales as it was for Morris. The *Nixon* case is also unavailing and dealt only with production of documents relating to the DOJ's "Project Safe Neighborhoods" program. *United States v. Nixon*, 318 F.Supp.2d 525, 530 (E.D. Mich. 2004) There, unlike here, defendant decline a state court plea offer that had as an element a promise regarding potential prosecution in federal court.

The case most on point is *United States v. Xing*, 2013 WL 4400087 (E.D. Va. Aug. 15, 2013), a memorandum opinion out of the Eastern District of Virginia addressing defendant's motion to dismiss the indictment against him. Xing had been charged with receipt and distribution of child pornography. Xing pled to multiple state counts of aggravated sexual battery and one count of forcible sodomy and received a 12-year prison sentence. The state court plea agreement did not refer to pending federal charges and made no assurance regarding their disposition. (Notably, a state defense counsel cannot advise a defendant about the precise penalties potentially confronting the defendant in federal court when the government has not charged the defendant with any federal child pornography offenses yet. *Xing*, 2013 WL 4400087 at *9.)

Xing filed a motion to be placed back in the position he would have been in had he not rejected the earlier state offer. The Court correctly found that Xing's ineffective assistance of counsel claim was premature because it did not pertain to a previous trial; was not being asserted on appeal; and did not collaterally attack a sentence under § 2255. *Xing*, 2013 WL 4400087 at *4. *See also Garrett v. United States*, 78 F.3d 1296, 1304 (8th Cir.

1996) (recognizing that except in rare circumstances, claims of ineffective assistance of counsel should be raised for the first time in collateral proceedings under § 2255). Therefore Xing's motion to dismiss is improper.

Critically, Xing's state child molestation conviction was wholly unrelated to his pending federal child pornography charges. Similarly, Morales was charged with separate offenses federally. As found in *Xing*, dismissal of the federal indictment would render the enforcement of federal criminal laws largely dependent on the particular legal advice a defendant received concerning unrelated state-law charges. But the United States is not liable for a state-defendant's lawyer's mistakes,[2] and the District Court in the Eastern District of Virginia could not "countenance such an affront to our federal design." *Xing*, 2013 WL 4400087 at *5. Finally, Xing asked the federal court to vacate his state court guilty plea and to require the state prosecutor to re-offer the earlier global plea deal that the defendant originally rejected. Appropriately, "This the Court cannot do." *Id.* at *6. Principles of federalism, comity, and dual sovereignty prevent such an order to the state court with respect to criminal cases lying within the state court's exclusive jurisdiction. *Id.* (citing *Younger v. Harris*, 401 U.S. 37, 44–45 (1971)). As the *Xing* Court succinctly stated: "A motion to dismiss a federal indictment is not the proper vehicle with which to raise an

---

[2] The undersigned has no basis to believe that the state defense counsel for Morales was in any way ineffective—neither providing deficient performance nor causing prejudice—but that appears to be the tact defendant is taking as his state defense counsel is on the witness list for the April 29, 2019 motions hearing.

ineffective assistance of counsel claim pertaining to previously adjudicated, and, completely unrelated, state-court charges." *Id.*

### C. Defense Efforts To Elicit Testimony of Federal Task Force Officer

Counsel for the defendant is seeking to elicit testimony from Special Agent Robert Fraik of the Minnesota BCA specific to the motion to dismiss. For the reasons outlined above, that motion is premature and without validity, so the government opposes any testimony by SA Fraik.

Further, given the protections under 28 C.F.R. § 16.23(c), the undersigned requested an affidavit of the intended testimony to be sought from SA Fraik. The government is in the process of reviewing the affidavit dated April 17, 2019, with the intention of significantly narrowing the topics of potential testimony. The undersigned will communicate with defense counsel to see if an agreement can be reached on the scope of testimony. If not, further litigation and a potential delay in the hearing may be warranted. The undersigned will keep the Court apprised of any agreement.

## II. Defendant's Motion to Suppress November 8, 2017 Statements – Doc. No. 57

Defendant seeks to suppress two of the six statements he provided to law enforcement, specifically statements made on November 8, 2017 at approximately 12:32 a.m. and 5:32 p.m. The Defendant's motion is moot. The undersigned has communicated to defense counsel that the government does not intend to use either of those two statements in its case in chief with a small caveat. The undersigned understands that the defendant is not challenging the search warrant to take a buccal swab of the defendant for DNA testing.

The execution of the search warrant was recorded on one of the November 8, 2017 interviews.  While the undersigned does not anticipate using that portion of the statement, the defendant does not challenge it or object to its use to show that the search warrant was executed properly.

## III.  Defendant's Motion for Government To Retain and Disclose Investigative Materials – Doc. No. 58

The United States does not object to requiring that law enforcement officials involved in the investigation of this case retain and preserve their rough notes and evidence seized.  However, the United States objects to any order concerning the disclosure of rough notes.

Rough notes are not considered statements within the meaning of the Jencks Act, 18 U.S.C. § 3500.  *See United States v. Redding*, 16 F.3d 298, 301 (8th Cir. 1994) (concluding that rough notes are not a statement of witness as there was no evidence witness signed, adopted, or approved of notes); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (defendant not entitled to discover government agents' general notes from witness interviews). Nor are agent rough notes generally discoverable as a "statement" of the agent.  *See, e.g.*, *United States v. Simtab*, 901 F.2d 799, 808-09 (9th Cir. 1990); *United States v. Williams*, 875 F.2d 846, 853 (11th Cir. 1989).  The government has made all required disclosures in this case.  The defendant has not made any showing—nor can he— that the rough notes need be disclosed.  In seeking such notes for a motion to dismiss that is both premature and meritless under the dual sovereignty doctrine, such a request should

be denied.

Dated: April 23, 2019                                    Respectfully Submitted,

                                                         ERICA H. MacDONALD
                                                         United States Attorney

                                                         *s/Laura M. Provinzino*
                                                         BY: LAURA M. PROVINZINO
                                                         Assistant United States Attorney
                                                         Attorney ID No. 0329691