UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-20 (DWF/LIB)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRIS MORALES,

    Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM**

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Laura M. Provinzino and Katharine T. Buzicky, Assistant United States Attorneys, hereby provides this response to the defendant's memorandum of law, Doc. No. 69, in support of its motion to dismiss indictment, Doc. No. 56. As will be discussed herein, defendant's motion should be denied.

### A. Procedural History

On November 7, 2017, the Beltrami County Sheriff's Office was contacted about a missing 13-year-old girl. The investigation began and started to narrow on Chris Morales. A Jeep registered to Napoleon Morales with an Illinois license plate had been observed near the girl's home. Chris Morales' phone number was obtained, and a pen register/trap and track warrant was obtained. Morales and the victim were located in Minneapolis. Post-*Miranda*, Morales disclosed how he met the victim. He disclosed that they had exchanged naked photographs and that he had sent the victim videos of himself masturbating. Morales

also disclosed the multiple occasion in which he and the victim had sexual intercourse. A later review of the defendant's Facebook communication with the victim indicated that he clearly understood her age and that she produced child pornography at his request.

On November 9, 2017 Morales was charged with five counts of possession of pornographic work involving minors in Beltrami County for images that were possessed on Morales' Apple iPhone. The defendant retained George Duranske, III, an experienced defense lawyer as his counsel. Duranske knew that law enforcement continued to investigate the case (specifically officers from Beltrami County Sheriff's Office and the Minnesota Bureau of Criminal Apprehension), including obtaining warrants for social media accounts and one of Morales' laptops—resulting in more than 100,000 pages of evidence to review. Duranske reviewed that evidence. He began to prepare to defend the child pornography possession case with the defendant in a trial scheduled to begin in early September 2017. Duranske knew that the federal government could bring charges and had communicated that possibility to Morales, including that federal charges carry greater penalties. Morales testified that he was advised by Duranske that federal charges could be brought; he persisted in his innocence to Duranske of the Beltrami County charges. Duranske engaged in very informal discussions about a possible plea with the Beltrami County prosecutor. There was no written plea agreement or any oral or written communication indicating that Morales would plead guilty or to which count(s). No federal prosecutor or federal agent were part of those plea discussions. *See* Doc. No. 68.

In September 2018, a criminal complaint was obtained by BCA Special Agent Robert Fraik from the Honorable Jon T. Huseby for the sexual exploitation of children in violation of 18 U.S.C. § 2251, which is more commonly known as production of child pornography.[1] An indictment followed on January 22, 2019 with one count of transferring obscene material to minors on August 4, 2017, in violation of 18 U.S.C. § 1470; one count of coercion and enticement on August 11, 2017, in violation of 18 U.S.C. § 2422(b); two counts of travel with intent to engage in illicit sexual conduct on August 15, 2017 and November 1-7, 2017, in violation of 18 U.S.C. § 2423(b)[2]; and one count of production of child pornography on August 29, 2017, in violation of 18 U.S.C. § 2251(a) and (e). No child pornography possession counts were charged federally. Beltrami County dismissed its charges.

**B.    Legal Argument**

Defendant argues, based on a 2006 Sixth Circuit case that has never been cited in the Eighth Circuit, that his Sixth Amendment right to the effective assistance of counsel has been violated and that the appropriate remedy is dismissal of the indictment. This argument fails for several reasons.

---

[1] SA Fraik testified that he was a federal task force officer, which essentially allows him to swear out and execute federal search warrants and federal complaints to obtain arrest warrants.

[2] The enticement and transportation counts are classic federal charges known as the Mann Act.

### 1. Defendant's Argument is Premature

The Eighth Circuit has held that except in unusual circumstances, claims of ineffective assistance of counsel are not properly considered on direct appeal. *United States v. Iversen*, 90 F.3d 1340, 1342 (8th Cir. 1996). That is because, ineffective-assistance claims are generally better left for post-conviction proceedings. Such claims are proper on direct appeal only where the record has been fully developed, to avoid plain miscarriage of justice, or where counsel's ineffectiveness is readily apparent. *United States v. Cook*, 356 F.3d 913, 919–20 (8th Cir. 2004). None of those factors are present here. At most, defendant identifies an inapposite case relating to suppression of evidence. Defendant has not and cannot cite any binding authority that an ineffective assistance claim to dismiss the indictment is ripe at this stage.

### 2. Defendant's Requested Remedy is Inappropriate

Defendant's requested remedy that this Court dismiss the indictment is unwarranted. In *United States v. Morrison*, 449 U.S. 361 (1981), the Supreme Court makes clear that the remedy in a Sixth Amendment context is not dismissal of the indictment, but suppression of the evidence obtained as a result of the violation. Dismissal of an indictment is not appropriate absent a showing of any adverse consequence to the representation respondent received or to the fairness of the proceedings leading to conviction. *Morrison*, 449 U.S. at 361. There is no basis to impose the remedy asked—dismissal of the indictment—and to allow Beltrami County to charge the defendant again even though the County has dismissed its charges of child pornography possession. *Id.* at 365 ("Absent such impact on the

criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial.") As held in *United States v. Solomon*, the Eighth Circuit agrees that any Sixth Amendment deprivation is subject to the rule that remedies should be tailored to the injury suffered from the constitutional violation, that is, "remedies should be limited to denying the government use of the results of its intrusion." 679 F.2d 1246, 1250 (8th Cir. 1982).

Defendant argues without evidence that the "intertwined coordination" between state and federal authorities requires dismissal. Yet the evidence produced at the motions hearing is that this investigation required an all-hands-on-deck investigation to locate a missing 13-year-old and that various follow-up to obtain and investigate the defendant's social media accounts was necessary. The Eighth Circuit has specifically recognized that cooperation between state and federal authorities does not amount to unlawful collusion. *See United States v. Williams*, 104 F.3d 213, 216 (8th Cir. 1997) (citing *United States v. Talley*, 16 F.3d 972, 974 (8th Cir. 1994)). The investigation was routine. And the record demonstrates that the prosecutors were independent.

Importantly, the Eighth Circuit recognizes the cooperation between federal and county/state officials is not offensive to the constitution but actually welcome. In *United States v. Leathers*, 354 F.3d 955, 960 (8th Cir. 2004), the Eighth Circuit declined to credit a similar argument to that made by Morales—that the referral of the matter to federal prosecutors was the direct cause of the federal prosecution and that the federal prosecutors were not acting independently. "A causal connection such as the one shown here does not

make a subsequent federal prosecution a 'sham and cover' for a state prosecution. Referrals and cooperation between federal and state officials not only do not offend the Constitution but are common place and welcome." (citing *Bartkus v. Illinois*, 359 U.S. 121, 123 (1959)). The state and federal prosecutions were conducted independently by different prosecutors. That is the case here. Child pornography charges were brought in Beltrami County; travel, coercion, and child pornography production counts were brought in the United States District Court.

Notably, the key case relied on by Morales is readily distinguishable. In *United States v. Morris*, 470 F.3d 596, 600 (6th Cir. 2006), the defendant was investigated and arrested by a state-federal joint task force on firearm and drug-related charges. The state court plea offer included an agreement that the defendant would not be prosecuted in federal court, even though the state and federal governments could have chosen to pursue separate prosecutions. No such promise was made to Morales. Further, the Sixth Circuit found that because the U.S. Attorney's Office had made itself a party to the state court plea offer, the district court was justified in enforcing the plea offer against it based on traditional principles of contract law. Here, the U.S. Attorney's Office was not a party to any state court plea offer

Under the defendant's cited case, *Morris*, the Court lacked jurisdiction to remand the case to state court. Given that there never was a plea agreement in state court, this Court also has no authority to order the parties to enforce a plea agreement. No more than a few minute into Duranske's cross examination, it became abundantly clear that no plea

agreement ever existed. Even the three terse emails provided two weeks after the hearing, Doc. No. 68, do not evidence a plea agreement. At best, they evidence very preliminary plea discussions. In *Morris*, the court was animated by its ability to put the defendant back in the position he would have been but for the ineffective assistance of counsel. *Morris*, 470 F.3d at 600. Here, there is nothing to remedy and no better position in which to return Morales.[3]

Morales' 21-page memorandum does not address *United States v. Xing*, 2013 WL 4400087 (E.D. Va. Aug. 15, 2013), a memorandum opinion out of the Eastern District of Virginia addressing defendant's motion to dismiss the indictment. Xing had been charged with receipt and distribution of child pornography in federal court. Xing pled to multiple state counts of aggravated sexual battery and one count of forcible sodomy and received a 12-year prison sentence. The state court plea agreement did not refer to pending federal charges and made no assurance regarding their disposition. (Notably, just as Duranske testified, a state defense attorney cannot advise a defendant about the precise penalties potentially confronting the defendant in federal court when the government has not charged the defendant with any federal child pornography offenses yet. *Xing*, 2013 WL 4400087 at *9.)

---

[3] There can be no doubt after the defendant presented four witnesses that the United States Attorney's Office was not a party to a state court plea discussions. There was no plea agreement. There arguably was no offer. This court cannot enforce any agreement against the U.S. Attorney's Office based on contract law principles. Therefore, there is no basis to remand to state court. Moreover, there is no basis to dismiss the indictment. *See Morris*, 470 F.3d at 600.

Xing filed a motion to be placed back in the position he would have been in had he not rejected the earlier state offer. The Court correctly found that Xing's ineffective assistance of counsel claim was premature because it did not pertain to a previous trial; was not being asserted on appeal; and did not collaterally attack a sentence under § 2255. *Xing*, 2013 WL 4400087 at *4. *See also Garrett v. United States*, 78 F.3d 1296, 1304 (8th Cir. 1996) (recognizing that except in rare circumstances, claims of ineffective assistance of counsel should be raised for the first time in collateral proceedings under § 2255). Therefore Xing's motion to dismiss is improper.

Critically, Xing's state child molestation conviction was wholly unrelated to his pending federal child pornography charges. Similarly, Morales was charged with separate offenses federally. As found in *Xing*, dismissal of the federal indictment would render the enforcement of federal criminal laws largely dependent on the particular legal advice a defendant received concerning unrelated state-law charges. But the United States is not liable for a state-defendant's lawyer's mistakes,[4] and the District Court in the Eastern District of Virginia could not "countenance such an affront to our federal design." *Xing*, 2013 WL 4400087 at *5. Finally, Xing asked the federal court to vacate his state court guilty plea and to require the state prosecutor to re-offer the earlier global plea deal that the defendant originally rejected. Appropriately, "This the Court cannot do." *Id.* at *6.

---

[4] To emphasize the point, there did not appear to be anything from Duranske's testimony that would support an ineffective assistance of counsel claim. Duranske appeared careful, thoughtful, and experienced. Other than his lack of knowledge about the non rights-conferring *Petite* policy, Morales points to nothing.

Principles of federalism, comity, and dual sovereignty prevent such an order to the state court with respect to criminal cases lying within the state court's exclusive jurisdiction. *Id.* (citing *Younger v. Harris*, 401 U.S. 37, 44–45 (1971)). As the *Xing* Court succinctly stated: "A motion to dismiss a federal indictment is not the proper vehicle with which to raise an ineffective assistance of counsel claim pertaining to previously adjudicated, and, completely unrelated, state-court charges." *Id.* Even while the defendant recognizes certain limitations on this Court's jurisdiction, Morales believes that dismissal of the federal indictment will not provide a windfall because Beltrami County could recharge the defendant. They could do that now.

### 3. Defendant's Argument Also Fails on the Merits

It is well established that a petitioner's ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. *United States v. Davis,* 452 F.3d 991, 994 (8th Cir. 2006); *United States v. Cordy*, 560 F.3d 808, 817 (8th Cir. 2009). The burden of demonstrating ineffective assistance of counsel is on a defendant. *United States v. Cronic,* 466 U.S. 648, 658 (1984); *United States v. White,* 341 F.3d 673, 678 (8th Cir. 2003). To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694.

Both parts of the *Strickland* test must be met in order for an ineffective assistance of counsel claim to succeed. *Anderson v. United States,* 393 F.3d 749, 753 (8th Cir. 2005). The first part of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Review of counsel's performance by the court is "highly deferential," and the Court presumes "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The attorney's conduct must fall below an objective standard of reasonableness to be found ineffective, *United States v. Ledezma-Rodriguez,* 423 F.3d 830, 836 (8th Cir. 2005). If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient. *Carter v. Hopkins,* 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.*

The second part of the *Strickland* test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Anderson,* 393 F.3d at 753-54 (quoting *Strickland,* 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

As made abundantly clear during the hearing, Duranske's representation in the Beltrami County criminal case was more than adequate. He provided good representation

in the state case and advised the defendant of the risks. Nothing in the record indicates there was anything close to a Sixth Amendment violation.

The Supreme Court has repeatedly rejected attempts by criminal defendants to extend the Sixth Amendment right to counsel to preindictment proceedings, even where the same proceedings may be a "critical stage" when they occur postindictment. *Compare United States v. Wade*, 388 U.S. 218, 236–37 (1967) (Sixth Amendment right to counsel in postindictment lineups), *with Kirby v. Illinois*, 406 U.S.682, 690 (1972) (plurality opinion) (no Sixth Amendment right to counsel in preindictment lineups); *compare Massiah v. United States*, 377 U.S. 201, 205–06 (1964) (Sixth Amendment right to counsel in postindictment interrogations), *with Moran v. Burbine*, 475 U.S. 412, 431–32 (1986) (no Sixth Amendment right to counsel in preindictment interrogations). The Supreme Court's rule is crystal clear. A person's Sixth Amendment right to counsel attaches only at or after the time that adversarial judicial proceedings have been initiated against him. *United States v. Gouveia*, 467 U.S. 180, 187 (1984). Here, there was no proceeding until a federal complaint was filed. Morales' Sixth Amendment right to counsel was not violated. The defendant had, at all times, counsel for both his state and federal proceedings.

Morales' argument may have a bit more merit if both the state and federal governments prosecuted him for the exact "same offense." *Texas v. Cobb*, 532 U.S. 162, 173 (2001). A cursory review of the indictment eliminates that argument given the multiple counts for offenses separate from the state complaint. Therefore, *United States v. Red Bird*, 287 F.3d 709, 715 (8th Cir. 2002), is readily distinguishable. The basis for the court's

decision in *Red Bird* is not entirely clear. On the one hand, the court looked to *Cobb* and, using the *Blockburger* test, determined that the tribal and federal offenses were the same for Sixth Amendment purposes because they contained the same essential elements. *Id.* In so doing, the court appeared to reject the argument that the dual sovereignty doctrine applied in the Sixth Amendment context. On the other hand, the court repeatedly emphasized the interconnectedness of the tribal and federal investigations as a reason for finding that the dual sovereignty doctrine did not apply. Critically, the Eighth Circuit noted that tribal governments and federal authorities commonly worked together in investigating and prosecuting crimes committed on reservations and that "tribal sovereignty is unique and limited." *Id.* at 713, 715 (citations omitted). Here, the relationship between the state and federal investigations in Morales' case is different from the relationship between the tribal and federal investigations in *Red Bird*. There was no evidence here to suggest that one of the prosecutions was a sham or that one of the sovereigns was the pawn of the other, while the Eighth Circuit expressed concern over the limited and unique nature of tribal sovereignty. Defendant's argument that there is no material difference between state and tribal court, Doc. No. 69 at 4, is wrong.

Under *Red Bird* or *Cobb*, the state and federal offenses in Morales' cases are different offenses for Sixth Amendment purposes. There can be no argument that Morales' Sixth Amendment right to counsel attached to uncharged federal offenses. In fact, Duranske testified that there would be no basis for him to advise a defendant if no federal charges have been brought.

Because defendant's ineffective assistance claim is not ripe and the remedy is not tenable, this Court need not address the merits. But even if Duranske were somehow deficient in this representation of Morales—and the hearing and subsequent emails provide no basis for such a finding[5]—Morales cannot show that he suffered any prejudice.

Defendant spills a lot of ink on the DOJ's *Petite* policy, which is an internal policy that prohibits federal prosecution of a defendant who has been convicted in state court for the same conduct unless the subsequent federal prosecution is specifically authorized by the Attorney General. The Eighth Circuit has consistently held that the *Petite* policy confers no substantive rights on the accused. *United States v. Staples*, 747 F.2d 489, 491 (8th Cir. 1984). The enforcement of the policy lies with the Attorney General, "and an individual defendant cannot avoid prosecution on the basis of this policy." *Id.* (citing cases). Tellingly, a habeas petition alleging ineffective assistance of counsel when defense counsel failed to raise the *Petite* policy was denied in *Fugitt v. United States*, 2016 WL 1305950, at *4 (E.D. Mo. Mar. 31, 2016). The *Petite* policy cannot form the basis of a claim that any subsequent federal prosecution was improper. *United States v. Kummer*, 15 F.3d 1455, 1461 (8th Cir. 1994). Therefore, Morales can obtain no relief based on it even if the government had acted contrary to the *Petite* policy. *See also United States v. Larsen*, 427 F.3d 1091, 1094 (8th Cir. 2005).

---

[5] Defense counsel chose not to have a transcript prepared of the hearing. Based on the undersigned's notes and recollection, Duranske testified that he was aware federal charges could be brought, there was no statute of limitations on the federal charges, and that the penalties would likely be stiffer. He communicated this information to Morales. Morales testified that Duranske had informed him of the possibility of federal charges.

To be very clear, none of the circumstances that troubled the Sixth Circuit in *Morris* are present here. Morales and Duranske met multiple times to discuss the evidence and to prepare for trial. They had privacy for attorney-client consultation. There was no misinformation regarding sentencing exposure at the state level and none at the federal level. *See Morris*, 470 F.3d at 602.

At the end of the day, Morales cannot show any prejudice. Morales cannot show that the outcome would have been any different had Duranske advised him in greater detail about potential federal charges. Morales cannot show that the outcome would have been any different had Duranske urged him to plead guilty in state court. Morales cannot show that the outcome would have been any different had he actually pled guilty in state court. The United States Attorney's Office would have and did charge Morales with a range of federal crimes. Morales' memorandum otherwise is a bunch of should haves, could haves. But it is not the stuff of finding ineffective assistance and dismissing an indictment.

Dated: May 20, 2019

Respectfully Submitted,

ERICA H. MacDONALD
United States Attorney

*s/Laura M. Provinzino*
BY: LAURA M. PROVINZINO
Assistant United States Attorney
Attorney ID No. 0329691